**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROBERT ALDRICH,       )<br>    Plaintiff,          )<br>                       )<br>v.                     )<br>                       )<br>TOWN OF BROOKLINE, BENNY )<br>SZETO, SEAN WILLIAMS,  )<br>and MILES MURPHY,      )<br>    Defendants.        ) | Civil Action No. 06cv10950-NG |

GERTNER, D.J.:

*A M E N D E D*
**MEMORANDUM AND ORDER**
**ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
March 18, 2010

This Memorandum and Order amends and replaces the Memorandum and Order issued yesterday. It is amended by the addition of two new footnotes: footnotes 2 and 3 on page 4. Otherwise, both memoranda are the same.

**I.    INTRODUCTION**

Robert Aldrich ("Aldrich") is suing the Brookline Police Department ("BPD") and three BPD officers, Benny Szeto, Sean Williams, and Miles Murphy for racial discrimination, false arrest, conspiracy, abuse of process, and perjury, pursuant to 42 U.S.C. § 1983. The claim relates to Aldrich's arrest, and ultimate conviction, for receiving a stolen vehicle, recklessly and negligently operating a motor vehicle, and failure to stop for a police officer. He was sentenced to 60 to 90 months in custody. (Norfolk Superior Court Criminal Docket, Def.'s Ex. Q, document #80-15).

Aldrich claims that the officers were without probable cause to arrest him, and further, that the arrest was the product of racial profiling (Aldrich is African-American). The uncontested facts indicate that there was more than ample basis for Aldrich's arrest: He was

seen running a few hundred feet from the house where a stolen car had crashed just minutes before, in the early morning hours.  While the racist comments that Aldrich said he heard are troubling, nothing in the record links those comments to this arrest.

The facts *do* support Aldrich's claim that the Officers Szeto and Williams lied during the trial of his case and in an investigative report.  (See Def.s' Statement of Material Facts ¶¶ 85-86; BPD Police Report of Benny Szeto (June 5, 2003), Def.'s Ex. E, document #80-9).  Szeto claimed that when the stolen car crashed, he radioed a description of the man fleeing the vehicle, a description that matched Aldrich's.  Williams agreed that he had heard Szeto's description of the suspect.  In fact, the turret tape that was finally produced after trial -- although requested before -- showed no such description was given.

After these facts came to light the District Attorney agreed to Aldrich's motion for a new trial and dismissed the charges.  While the testimony of Szeto and Williams raises concerns, there is no civil rights action here as a matter of law.  The Supreme Court held in Briscoe v. LaHue, 460 U.S. 325 (1983), that police officers are immune from civil liability for past perjured testimony.  See also Limone v. United States, 271 F. Supp. 2d 345, 366 (D. Mass. 2003), aff'd in part sub nom, Limone v. Condon, 372 F.3d 39 (1st Cir. 2004).[1]

Thus, as to the claims concerning Aldrich's arrest, the facts do not support it. As to the claims concerning Aldrich's trial, the law does not.  Accordingly, the defendants' motion for summary judgment (document #78) is **GRANTED**.

---

[1] Despite this record, Aldrich did not challenge the failure to produce the turret tape at his trial under Brady v. Maryland, 373 U.S. 83 (1963).  No such allegation is in his pro se complaint, and even after counsel was appointed, she did not move to amend.  Indeed, the record is quite ambiguous about who was responsible for the failure to produce the evidence: If it were the police, it would be actionable under § 1983. If it were the prosecutor after the case was brought, it would not. In any case, the individuals that Aldrich has sued never had the tape and the person who did, the individual identified as the keeper of the records for the Brookline Police, was not sued.

## II.     BACKGROUND

The following information is drawn from the parties' statements of material facts and the accompanying documents. Reasonable inferences are drawn in Aldrich's favor as Fed. R. Civ. P. 56 requires. Mosher v. Nelson, 589 F.3d 488, 492 (1st Cir. 2009).

### A.     Aldrich's Arrest

On June 5, 2003, Officer Benny Szeto, while in his patrol car, saw a blue Saab stopped at a red light on Cypress Street in Brookline. (Def.s' Statement of Material Facts ¶ 22). He noticed that the car had an expired registration sticker, and asked police dispatch to run the license plate. (Id. ¶ 23). Dispatch confirmed the car as stolen. (Id. ¶ 24). Once the light turned green, Szeto followed it across Boylston Street. The car made a quick left onto Brington Road and started to accelerate. (Id. ¶ 25). Szeto turned on his police lights, at which point the car sped off and crashed into 59 Brington Road. (Id. ¶¶ 25, 28). The driver ran out of the car and into the backyard of 64 Brington Road. (Id. ¶ 29). Szeto chased after him but lost him in the backyard. (Id. ¶ 30). He radioed the following: "[H]e's taking off on me. . . . He just jumped out. We're on Brington Road. . . . He ran somewhere back there from the house. . . . He's in the backyard somewhere." (Id. ¶ 31).

Meanwhile, another BPD officer, Officer Sean Williams, saw Aldrich running on Tappan Street and jumping the fence into Cypress playground, a short distance away from the site of the crash. (Id. ¶ 34; Map of Area, Def.'s Ex. J, document #80-11). Williams then radioed, "He's over here. . . . By the high school, in the park," (Def.s' Statement of Material Facts ¶ 35) and

shortly thereafter, apprehended Aldrich. (Id. ¶ 40). Other BPD officers soon converged on the scene. (Id. ¶ 47).[2]

In his complaint, and a subsequent affidavit, Aldrich asserts that on the night of the arrest, he was standing by a train station (the MBTA or the "T") in Brookline at about 1:50 a.m. (Compl. ¶ 7; Aff. of Robert Aldrich ¶ 3, document #87-2). In his complaint, he claims that when it started to rain, he left the station and began to walk home "hurriedly" through a nearby park. (Compl. ¶ 8). In the affidavit, he claims he began to run from the "T" Station when a group of people (the officers) ran towards him. (Aff. of Robert Aldrich ¶ 3, document #87-2).

In either case, Aldrich's credibility is undermined by his own admissions.[3] At the pretrial conference he admitted that he was in the stolen car and that he intended to call a witness to establish as a defense that he did not know the car was stolen (Pretrial Transcript 32:1-33:23; 47:15-21, Def.'s Ex. O, document #80-14). His credibility is also undermined by his suggestion during his opening statement in that trial that the reason he ran from the car was because he did not have a driver's license. (Trial Transcript, I-152:9-18, Def.'s Ex. G, document #80-9).

---

[2] Officer Murphy is not mentioned anywhere in the plaintiff's summary judgment statement of facts. In fact, the only reference to Murphy in any of Aldrich's filings is an allegation in his complaint that once he was arrested, Murphy told the officers to bring him to the station for booking. Compl. ¶¶ 33-34.

[3] Ordinarily, credibility is not something addressed in summary judgment. When, however "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

Finally, Aldrich claims in an affidavit that after he asked why he was under arrest, one of the officers stated, "BBB." (Aff. of Robert Aldrich ¶ 11, document #87-2). He asked what BBB was. Id. The officers began laughing and told him it stood for "Being Black in Brookline." Id.[4]

**B.     Aldrich's Trial**

Aldrich's trial began on July 27, 2005, with Aldrich representing himself. (Def.s' Statement of Material Facts ¶ 64). Officer Szeto testified that when the suspect ran out of the car into the backyard at Brington Street, he radioed a specific description -- "black male, probably a black or blue jacket." (Id. ¶ 85). Officer Williams testified along the same lines -- that he heard the suspect described as "black male, dark jacket" over the radio. (Id. ¶ 86).

In fact, according to the tape of the transmissions, which was produced nearly three months after the trial, Szeto never radioed a physical description of the suspect he saw fleeing from the stolen car before Aldrich's arrest. (Id. ¶ 89). Szeto admitted as much. After Aldrich was apprehended, another officer asked him over the radio whether he saw the suspect, and Szeto responded: "The only thing I got was - I only saw, I think - I believe he had dark, curly hair. I could be wrong, but that's the only thing I saw when he jumped out of the car." (Transcript of Brookline Police Dep't Radio Transmissions Re: Robert Aldrich at 3:23-24, Def.'s Ex. H at 4:4-7, document #80-10).

---

[4] In his pro se complaint statement of facts and in his opposition to the defendants' motion for summary judgment, Aldrich claims that he was roughed up at his arrest and then later denied medical treatment at the police station (Compl. ¶¶ 9-13, 16-19; Aff. of Robert Aldrich ¶¶ 6-10, 12, 14, document #87-2). Despite these factual allegations, Aldrich never actually asserts either excessive force or denial of medical treatment as a basis for § 1983 liability in his complaint, and his counsel did not move to amend after she was appointed. Even if he had brought these claims, they would be belied by the videotape of his booking at the police station, which showed no inappropriate treatment (Videotape: Brookline Police Dep't Robert Aldrich Booking 06/05/03, Def.'s Ex. L, document #80-13), and his signature refusing medical treatment on the EMT form. (Fallon Ambulance Service Run Sheet, Def.'s Ex. M, document #80-12).

Significantly, Aldrich did not find out about the inconsistency between the officers' testimonies and the radio transmission until several months after he was convicted, when he received the tape through a Freedom of Information Act ("FOIA") letter. (Commonwealth's Response to Defendant's Amended Motion for New Trial, Def.'s Ex. S, document #80-16). Aldrich had pressed for the tape long before his trial. Six weeks before the trial, he filed a motion for the tape of the officers' radio transmissions the night of his arrest. (Norfolk Superior Court Criminal Docket, Def.'s Ex. Q, document #80-15). The court granted the motion on June 21, 2005. (Id.)

The record is not clear as to why the tape was not produced. On March 31, 2006, Captain Michael Gropman, the Keeper of the Records for the BPD, wrote a letter to Aldrich, in which he stated that he was enclosing *a fourth copy* of the tape. (Letter from Captain Michael Gropman, Traffic & Records Commanding Officer, to Robert Aldrich (Mar. 31, 2006), Def.'s Ex. R, document #80-16). He claimed that it had been provided to the District Attorney's office on three prior occasions (one tape on June 21, 2005, and two on October 3, 2005) and once before to the defense (on October 3, 2005). (Id.)

The Norfolk County Assistant District Attorney, Greg Connor, however, asserted he never received the tapes. (Commonwealth's Response to Defendant's Amended Motion for New Trial, Def.'s Ex. S, document #80-16). Connor stated that on June 20, 2005, the DA's office faxed and mailed a request for the tape. (Id.). He was informed by the BPD sometime during the week of June 21 that the tapes had been ordered, but it would take two to three weeks. (Id.). In September, after the trial, he sent a letter to a Lt. McDermott in the BPD asking about the tape, and McDermott reiterated that it had been produced in June and sent to the Brookline DA's

office.  (Id.).  An ADA at the Brookline office searched but could not find the tape.  Connor concluded that in the interests of justice, Aldrich's motion for a new trial should be allowed. (Id.).  The Court agreed; Aldrich was released on August 30, 2006.  (Norfolk Superior Court Criminal Docket, Def.'s Ex. Q, document #80-15).

### III.   STANDARD OF REVIEW

Summary judgment is appropriate when the record shows that there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c)(2).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Reasonable inferences are drawn in favor of the non-moving party.  Mosher v. Nelson, 589 F.3d 488, 492 (1st Cir. 2009).

### IV.   ANALYSIS

To establish liability under Section 1983, Aldrich must show that: "(1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States."  Johnson v. Mahoney, 424 F.3d 83, 89 (1st Cir. 2005).  The constitutional rights that Aldrich apparently claims here are his Fourth and Fourteenth Amendment rights in connection with his arrest.

#### A.   False Arrest, False Imprisonment, and Abuse of Process Claims

Aldrich claims that the officers violated his Fourth Amendment rights through a false arrest and false imprisonment.  "The Fourth Amendment right to be free from unreasonable seizures of the person demands that an arrest be supported by probable cause."  Santiago v. Fenton, 891 F.2d 373, 383 (1st Cir. 1989); Beck v. Ohio, 379 U.S. 89, 90 (1964).  False

imprisonment is a species of false arrest, based on an arrest without probable cause. See Goddard v. Kelley, 629 F. Supp. 2d 115, 129 (D. Mass. 2009) ("A police officer is liable for false imprisonment if he arrests, or causes the arrest, of the plaintiff, without probable cause. This is essentially the same as the Fourth Amendment standard for unlawful arrest."). To establish probable cause, the defendants must show that, "at the time of the arrest, the collective knowledge of the officers involved was 'sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense.'" United States v. Link, 238 F.3d 106, 109 (1st Cir. 2001) (quoting United States v. Bizier, 111 F.3d 214, 216-17 (1st Cir. 1997)). To evaluate whether probable cause existed, the Court looks to the totality of the circumstances. United States v. Reyes, 225 F.3d 71, 75 (1st Cir. 2000).

Here, the officers had ample probable cause to arrest Aldrich. The car Szeto was chasing crashed on Brington Road. The "T" stop and park where the officers saw Aldrich minutes later was just a few hundred feet from Brington Road. (See Map of Area, Def.'s Ex. J, document #80-11). Further, after 1:00 in the morning, the "T," where Aldrich claimed to be standing, is no longer running. See Massachusetts Bay Transportation Authority, Subway Schedules and Maps, http://www.mbta.com/uploadedFiles/Documents/Schedules_and_Maps/Subway/frequency-schedule.pdf. Given the hour, the absence of other people on the street, and the proximity to the crash site, it was reasonable for the officers to believe that Aldrich was the person who had run from the stolen car. Since the officers had probable cause to arrest Aldrich, the false arrest and false imprisonment grounds fail.[5]

---

[5] Aldrich also argues the defendants participated in malicious prosecution, again, not in his complaint, but in his summary judgment opposition. (Pl.'s Opp. to Summ. J. 10). Even if he had properly brought this claim, it would fail. Malicious prosecution requires "a showing that criminal proceedings were instituted without probable cause." McCarthy v. City of Newburyport, 252 Fed. Appx. 328, 333 (1st Cir. 2007).

Likewise, Aldrich's claim for abuse of process fails. "An action for abuse of process lies when an officer uses a lawful criminal process to accomplish an unlawful purpose." Santiago, 891 F.2d at 388 . Since Aldrich has failed to provide any evidence that the legal process was used for an illegitimate purpose, or even state what the illegitimate purpose may be, the claim must be dismissed. Furthermore, the First Circuit has held that "proof of abuse of process alone cannot support a finding of liability under [Section] 1983." Id. Judgment on this claim is granted to the defendants.

### B.      Racial Profiling/Discrimination

To establish that the defendants violated Aldrich's right to equal protection under the Fourteenth Amendment, Aldrich must demonstrate that they treated him differently than they would have white citizens because of his race. Washington v. Davis, 426 U.S. 229 (1976); Clark v. Boscher, 514 F.3d 107, 114 (1st Cir. 2008) (internal quotations omitted) (Equal protection prohibits the government from treating a person "differently from others similarly situated . . . based on impermissible considerations such as race . . . ."). The different treatment at issue here would be Aldrich's arrest -- that is, he was arrested because he was black and not because the officers had probable cause to believe that he had stolen a car, taken off at high speed, and crashed into a house. Aldrich, however, has failed to provide evidence of discriminatory intent on the part of the defendants, nor has he provided independent evidence of racial profiling in instances other than this. What is more, in this case, the officers' actions are fully explained by probable cause.

### C.  Perjury

Aldrich's attempts to premise Section 1983 liability upon the false testimony of Szeto and Williams at his trial likewise fails. Police officers are absolutely immune from civil liability for perjured testimony. Briscoe v. LaHue, 460 U.S. at 326. Therefore, this claim cannot form the basis of Aldrich's Section 1983 case.

### D.  Civil Rights Conspiracy and Refusal to Prevent Conspiracy: 42 U.S.C. § § 1985 & 1986

Aldrich alleges the officers either engaged in a conspiracy to deprive him of his fundamental rights or neglected to prevent one. 42 U.S.C. §§ 1985, 1986. While this theory is barely mentioned in the complaint, I will consider it. A civil conspiracy under § 1985 requires proof that "there [has] been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws." Earle v. Benoit, 850 F.2d 836, 844 (1st Cir.1988) (internal quotations omitted). As laid out above, Aldrich has not been deprived a constitutional right (nor has he specified of which right he was allegedly deprived). The § 1986 claim can be dismissed just as easily since liability under § 1986 is premised on a conspiracy to violate civil rights under § 1985. Lowden v. William M. Mercer, Inc., 903 F. Supp. 212, 218 (D. Mass. 1995).

### E.  Town of Brookline Municipal Liability

Aldrich seeks to hold the Town of Brookline responsible for the supposed Fourteenth Amendment violations under a theory of municipal liability. Obviously, the Town cannot be liable when there was no underlying constitutional injury. See Monell v. Dep't of Social Services, 436 U.S. 658 (1978) (holding municipal liability may be liable when enforcement of official policy or custom inflicts injury).

## V.   CONCLUSION

For the foregoing reasons, I conclude there is no genuine issue of material fact.  The defendants' Motion for Summary Judgment **(document #78) is GRANTED**.

**SO ORDERED.**

**Date:  March 18, 2010**              */s/ Nancy Gertner*
                                          **NANCY GERTNER, U.S.D.C.**